# IN THE OREGON TAX COURT

Gordon L. and Carolyn W. AEGERTER
*v.*
## DEPARTMENT OF REVENUE
(TC 2932)

Plaintiff, Gordon L. Aegerter, appeared *pro se.*

Bonni C. Canary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision, part for plaintiff and part for defendant, rendered July 17, 1990.

### CARL N. BYERS, Judge.

Plaintiffs appeal from an income tax deficiency assessed on their 1981 return. A number of issues grow out of the following facts: In 1981, plaintiffs lived in Boring, Oregon, with their children. Gordon lost his job as a pile driver in November 1980. Recognizing that pile driving was a shrinking trade, he determined to find another line of work. He found

temporary work as a warehouseman in January or February 1981, was laid off and rehired permanently in April.

Meanwhile, Carolyn was searching for an in-home business to supplement the family income. Plaintiffs believed that multilevel marketing of products promised great riches. In 1981, they tried four different products: Prestige Shoppers (various household products), Spirulina Plankton (a health food supplement), Vantage Foods (a nutritional pasta), and Meadow Fresh (a dried milk product made from whey). While plaintiffs attempted to get all of these businesses going to some degree or another, their major effort was with Meadow Fresh. In addition to meetings and phone calls, Carolyn attended state fairs in both Alaska and Hawaii. Plaintiffs believed the market was particularly good for the product in those states. At the end of the year, plaintiffs had total gross sales from all products of $2,498, less cost of goods sold $1,807, for a gross profit of $691. However, plaintiffs' other operating expenses totaled $10,705, for a net loss of $10,014.

Defendant disallowed plaintiffs' loss on the ground that plaintiffs were not engaged in the businesses for profit. Defendant contends that, even if the court finds plaintiffs were engaged in the businesses for profit, major portions of the deductions should be disallowed due to lack of substantiation. Defendant also disallowed some of Gordon's job searching expenses because of the change in his trade or business.

IRC § 183 (1983) denies or limits deductions for activities not engaged in for profit. Whether plaintiffs engaged in business for profit is to be determined from all of the circumstances. Treas Reg § 1.183-2(b) (1983) lists nine factors to be considered in determining this issue. Those factors are not all inclusive.

Based on the evidence, the court finds that plaintiffs failed to show that their activities with regard to Prestige Shoppers, Spirulina Plankton and Vantage Foods were engaged in for profit. The court acknowledges that the passage of time has made it more difficult for plaintiffs to prove their intent. This is to be regretted, but does not excuse them from their burden.

The court finds that plaintiffs' activities with regard to Meadow Fresh were engaged in for profit. With Gordon

changing jobs, there was a clear need for additional family income. Plaintiffs were swayed by the hype of the multilevel marketing pitch as an easy road to riches. At the time, plaintiffs were inexperienced and did not act prudently. The trips made by Carolyn to Alaska and Hawaii were not family vacations. Gordon stayed at home with some of the children. The fact that plaintiffs had limited resources and incurred substantial debts in connection with those trips is indicative of a belief in the financial viability of the venture. The nature of the business involved was not a hobby. Although the products could be consumed by the family, plaintiffs would not have incurred the substantial expenses they did for that reason. Although defendant considers the fact that plaintiffs have made no profit in the seven years since 1981, the court gives that fact little weight. Plaintiffs have not made an election to postpone the determination of whether they engaged in a business for profit or not. IRC § 183(e)(1) (1981). Moreover, the businesses plaintiffs engaged in after 1981 are different businesses than Meadow Fresh.

■ Having determined that plaintiffs were engaged in business for profit in connection with Meadow Fresh in 1981, nevertheless plaintiffs failed to substantiate many of their expenses. After reviewing the testimony, the court finds the following expenses should be disallowed: Air fare to Alaska for daughter, $237; one-half of the meals, $315; business mileage, $2,860; home office, $2,289.67; telephone, $638; and gifts, $400.

■ With regard to the job searching expenses, defendant disallowed all meal expenses and all job searching expenses incurred prior to Gordon's initial employment as a warehouseman. IRC § 162 (1981) allows employees to deduct expenses incurred as a trade or business, including job search expenses. Expenses incurred in connection with changing a trade or business are not allowable. Rev Rul 75-120, 1975-1 CB 55. Although Gordon described his prior occupation as a "pile driver," in fact he was a rough carpenter specializing in construction involving pile driving. In any case, neither a carpenter nor a pile driver is the same trade or business as a warehouseman. Defendant's disallowance of expenses prior to Gordon's first job as a warehouseman are correct. Defendant is also correct in disallowing all meal expenses in connection with the search for the second warehouse job.

Defendant shall recalculate plaintiffs' income tax liability consistent with the above findings. Defendant will submit such calculations to the court with a copy to plaintiffs in accordance with Tax Court Rule 65. Thereafter, judgment will be entered in accordance therewith.

Costs to neither party.