IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| OSTROM COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 120773N (Control) |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| GREGORY OSTROM | ) | |
| and BARBARA OSTROM, | ) | TC-MD 120774N |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal from Defendant's letter, dated July 11, 2012, concluding that Ostrom

Company, Inc. (Ostrom Company), was not conducted for profit during the 2008, 2009, and

2010 tax years. (Ptfs' Compl at 3.) A trial was held in the Tax Court Mediation Center in

Salem, Oregon, on March 18, 2013. Gerald Hoots (Hoots), CPA, appeared and testified on

behalf of Plaintiffs. Bruce McDonald (McDonald), tax auditor, appeared and testified on behalf

of Defendant. Plaintiff Gregory Ostrom (Ostrom) did not appear at trial. Plaintiffs' Exhibits 1

through 15 and Defendant's Exhibits A through H were received without objection.

/ / /

/ / /

## I. STATEMENT OF FACTS

Hoots testified that Ostrom provided a written history of the Ostrom Company. (*See* Ptfs' Ex 11 at 3-10.) Hoots testified that Ostrom used to operate a successful construction company, Ostrom Construction Company, Inc., but he suffered medical problems requiring surgery in 2004, 2005, and 2006. (*See* Ptfs' Ex 11 at 4-6.) He testified that Ostrom could not continue in the construction industry, so he began looking into marine product sales in 2004 and 2005. (*See id.* at 6-7.) Hoots testified that, beginning in about 2005,[1] Ostrom offered his services as a product representative to smaller marine supply manufacturers. (*See id.*) He testified that Ostrom did not buy the products and maintain an inventory; rather, he entered agreements with several manufacturers to sell products for a commission. Hoots testified that the manufacturers that Ostrom represented were not large, well-known companies; as a result, it took more time and effort to develop a customer base. He testified that Ostrom primarily sought buyers located on the Oregon coast near Lincoln City and Newport. (*See id.* at 7.) Ostrom stated in his letter that, as of 2005, the "total of dealers now reached 8 qualified businesses." (*Id.*)

Hoots testified that Ostrom became a product representative for the following products: "Salt-X," "Mavericks Downrigger Snubber," "Killer Loading Tool," "No Escape Crab Pot," "Set the Hook," "Aquapel," "Lead Jig Molds," "Action Disc," and "Rescue Laser." (*See* Ptfs' Ex 1.) Hoots provided invoices from 2007 through 2011 detailing sales by Ostrom Company to eight different customers during that time period. (Ptfs' Ex 11 at 20-39.)

Hoots testified that Ostrom sold a "Salt-X" account to North River Boats; however, that deal fell apart in 2009 due to the unrelated legal problems of North River Boats. (*See* Ptfs' Ex 11 at 8-9.) McDonald asked if Ostrom Company changed its business plan or operations as a result

---

[1] Hoots testified that 2007 was the year that Ostrom changed "Ostrom Construction Company, Inc." to Ostrom Company. (*See* Ptfs' Ex 11 at 11-15.)

of losing the North River Boats account. Hoots testified that Ostrom tried to trim costs to the extent possible; for instance, he curtailed attendance at trade shows. McDonald questioned why product manufacturers would need Ostrom Company to sell their products noting, for example, that Salt-X can be purchased online without a product representative. (*See* Def's Ex A.)

Plaintiffs did not provide copies of any written agreements between Ostrom Company and product manufacturers or buyers. Hoots testified that he did not know whether Ostrom Company had any written agreements. Hoots testified that there was no written business plan for Ostrom Company; Ostrom's written history of Ostrom Company is the closest thing to a business plan that exists. (*See* Ptfs' Ex 11.) Hoots testified that, in his experience, most small businesses do not have a written business plan.

Hoots testified that Ostrom Company maintained a separate business location, a shop, but Ostrom normally met customers at their places of business. Hoots testified that Ostrum kept some of his construction equipment in the shop. McDonald testified that he visited Ostrom's shop and took several photographs of the exterior. (*See* Def's Ex B.) He testified that Ostrom's shop was a pole metal building with asphalt out front. (*See id.*)

Hoots testified that Ostrom Company paid expenses by check and credit card. He testified that Ostrom provided him with expense information for Ostrom Company. Hoots provided the following substantiation of expenses for Ostrom Company: a summary of Ostrom Company's credit card expenses by year and expense category (Ptfs' Ex 6); Ostrom's yearly mileage, including a trip diary prepared contemporaneously by Ostrom, and yearly supplies, which was prepared during the course of the audit (Ptfs' Ex 7); Ostrom Company's credit card statements, receipts, and bank statements for 2008, 2009, and 2010 (Ptfs' Exs 8-10); Ostrom Company's business investment account detail (Ptfs' Ex 4); and Ostrom Company's depreciation

schedule and asset detail (Ptfs' Ex 5). Hoots testified that Ostrom Company has not purchased any business assets since 2005; it is trying to "run lean and mean."

Hoots and McDonald agreed that Ostrom purchased personal items with his business credit card and checking account. (*See, e.g.,* Def's Ex D at 1, G at 3 ("paint store/repairs"); Ex D at 2, G at 4 ("probuild repairs").) Hoots testified that Ostrom included personal expenses in his list of "supplies." (*See* Ptfs' Ex 7.) Hoots testified that he reviewed the invoices, receipts, and other documents provided by Ostrom and removed all personal expenses. (*See* Ptfs' Ex 6.) Hoots testified, for example, that he reported no supplies expense in October 2008; Ostrom's only supplies expenses that month were personal. (*See, e.g.,* Ptfs' Ex 6 at 1, Def's Ex D at 1.) Hoots testified that Ostrom noted personal expenses on his credit card statements; for instance, on the October 2008 statement from Citibank, Ostrom noted expenses for the beach house as "H2O repair." (*See* Ptfs' Ex 10 (October 24, 2008, Citibank card purchases of siding, nails, big stretch caulk).)

Hoots testified, and McDonald agreed, that the majority of Ostrom Company's claimed business expenses were travel and automobile expenses. Hoots testified that those expenses are consistent with the nature of the sales business, which requires travel. Ostrom's mileage log includes dates, destinations, miles driven, fuel expenses, some odometer readings, and some notes about trips. (Ptfs' Ex 7.) McDonald testified that he considered Ostrom's mileage log inadequate because it does not substantiate the business purpose of each trip. (*See id.*) McDonald questioned the business purpose of numerous trips claimed by Ostrom and testified that many trips appeared to be personal in nature, such as those to the Oregon coast where Ostrom had a beach house.

/ / /

The first issue before the court is whether Plaintiffs' marine product sales activity was a business, for which deductions are allowed under IRC section 162, or an activity not engaged in for profit, under IRC section 183. Whether Plaintiffs' activity was one engaged in for profit requires the court to consider nine factors identified in Treasury Regulation 1.183-2(b). Due to the numerous factors that must be considered, the court will state certain facts pertinent to the nine factors in the analysis section only.

## II. ANALYSIS

As this court has previously noted, "[t]he Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev.,* TC-MD No 041142D, WL 2414746 *6 (Sept 23, 2005) (citing ORS 316.007).[2] As a result, the legislature adopted, by reference, the federal definition for deductions, including those allowed under IRC section 162 for trade or business expenses, and IRC section 212 nonbusiness expenses incurred in the production of income.

The first issue presented in this case is whether Plaintiffs' marine sales activity was a business within the meaning of IRC section 162 or, rather, an activity not engaged in for profit under IRC section 183.[3] If the court finds that the activity was a business under IRC section 162, then the second issue presented is whether Ostrom Company provided adequate substantiation for its claimed business expenses, specifically mileage, automobile depreciation, and supplies.

Under IRC section 162(a), a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" The

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2007.

[3] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2008.

code and regulations preclude deductions "for expenses incurred in connection with activities which are not engaged in for profit[,]" exception as provided in IRC section 183. Treas Reg § 1.183-2(a). "[D]eductions are not allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation." *Id.* Under section 183, if the activity is not engaged in for profit, the deductibility of expenses is limited to the amount of any profits. *Gallo v. Dept. of Rev.*, TC-MD No 011022F, WL 21675927 *3 (Jul 8, 2003).

> "The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. In determining whether such an objective exists, it may be sufficient that there is a small chance of making a large profit. * * * In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent."

Treas Reg 1.183-2(a); *Comm'r v. Groetzinger*, 480 US 23, 35, 107 SCt 980 (1987) ("to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify").

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 SCt 1039, 11 LEd 2d 226 (1992). The burden of proof in the Oregon Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

A.      *Business or not-for-profit activity under IRC section 183?*

Treasury Regulation section 1.183-2(b) states, "[i]n determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account.  No one factor is determinative in making this determination."  The factors listed in the regulation are non-exhaustive.  Treas Reg § 1.183-2(b).  At the outset, the court notes that the inquiry under IRC section 183 is made more difficult in this case due to the fact that Ostrom did not testify at trial.  Although Hoots is familiar with the Ostrom Company's operation and tax returns, Ostrom is in the best position to describe his marine sales activity and to testify whether his primary objective was to make a profit.

1.      *Manner in which taxpayer carries on the activity*

"The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit.  Similarly, where an activity is carried on in a manner substantially similar to other activities of the same nature which are profitable, a profit motive may be indicated.  A change of operating methods, adoption of new techniques or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive."

Treas Reg § 1.183-2(b)(1); *see also Knudsen v. Comm'r* (*Knudsen*), TC Memo 2007-340, 94 TCM (CCH) 461 at 466 (2007).  "While a taxpayer need not maintain a sophisticated cost accounting system, the taxpayer should keep records that enable the taxpayer to make informed business decisions.  * * * For a taxpayer's books and records to indicate a profit motive, the books and records should enable a taxpayer to cut expenses, increase profits, and evaluate the overall performance of the operation."  *Knudsen*, 94 TCM (CCH) at 467 (internal citations omitted).  "[I]f there is a lack of evidence that the taxpayer's records were utilized to improve the performance of a losing operation, such records generally do not indicate a profit motive."  *Sullivan v. Comm'r*, TC Memo 1998-367, 76 TCM (CCH) 664 at 668 (1998), *aff'd without*

*published opinion* 202 F3d 264 (5th Cir 1999); *see also Lucid v. Comm'r*, TC Memo 1997-247, 73 TCM (CCH) 2892 at 2898 (1997) (citations omitted) ("Petitioners' stated intention to make a profit did not comport with the fact that [the company] had nearly half a million dollars of accumulated costs by 1991. * * * The record does not reflect any sales of boating equipment that would have ameliorated the length of time necessary to break even").

Hoots testified that Ostrom Company was and is incorporated. He testified that Ostrom Company maintained a separate business checking account and a separate business investment account. (*See* Ptfs' Ex 3-4; *see also* Ptfs' Ex 10.) Hoots testified that both accounts were previously used for Ostrom's construction business. Hoots testified that Ostrom Company retained professional advice to prepare its tax returns and business records. (*See* Ptfs' Ex 2.) Ostrom provided three, one-page "dealer agreements" with "Mills Ace Hardware," "Newport Marine & RV," and "Greg's Marine Service, Inc." (Ptfs' Ex 11 at 3, 40-42.) Each of the "agreements" is dated in early May 2007 and includes contact information for the dealer. (*Id.*) None of the "agreements" include a description of the "agreement" or its terms. (*Id.*) It is unclear whether the "agreements" are anything more than contact information for those dealers.

Ostrom maintained records of his marine sales activity and engaged professional tax preparation services. However, there is no evidence that Ostrom reviewed his books or records to cut expenses, increase profits, or otherwise evaluate the performance of Ostrom Company. Plaintiffs offered no evidence regarding how other, similar businesses operate profitably, so the court cannot evaluate whether the Ostrom Company operates in a similar manner. Plaintiffs did not provide a written business plan for the Ostrom Company or written contracts between the Ostrom Company and its suppliers. It is unclear whether any written contracts existed. Hoots testified that the Ostrom Company had a chance of making a large profit, but the court cannot

determine from the evidence what profit or commission the Ostrom Company would have received from a large sales contract or how many sales contracts would have been required to make a profit in any of the tax years at issue. The first factor supports Defendant.

2.    *The expertise of the taxpayer or his advisors*

"Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices." Treas Reg § 1.183-2(b)(2). Hoots testified that Ostrom previously operated a successful construction business and knew how to establish business contacts. (*See* Ptfs' Ex 11 at 3-10.) Hoots testified that Ostrom wrote articles in boating publications, demonstrating his expertise. (*See id.* at 62-80.) Hoots testified that Ostrom had his own boat, although he did not deduct expenses for it, and had a second home on the Oregon coast.

There is no evidence that Ostrom engaged in extensive study or consulted with experts in the marine sales industry. The court accepts that Ostrom has some relevant business experience from his prior construction business and he is knowledgeable about fishing and related supplies from his personal experience. The second factor is neutral.

3.    *The time and effort expended by the taxpayer in carrying on the activity*

"The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit. The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity."

Treas Reg § 1.183-2(b)(3).

/ / /

Hoots testified that Ostrom worked full-time at his marine supply sales business during the tax years at issue; Ostrom did not have any other business. (*See* Ptfs' Ex 11 at 50-55.) Because Ostrom did not testify at trial, the court received little evidence of the time that Ostrom spent working at his marine supply sales business. The court has reviewed the mileage logs submitted into evidence and finds that the logs do not support Hoots' testimony that Ostrom worked full time at his business. Ostrom's travel logs suggest that he dedicated one or two days a week, at most, to calling upon customers and seeking out new products. (*See, e.g.,* Ptfs' Ex 7 at 9-16.)

Furthermore, the court questions whether some of Ostrom's claimed business trips were, in fact, primarily for personal purposes. For instance, McDonald drew the court's attention to an entry in Ostrom's mileage lot reporting that, on January 30, 2009, he "drove to Lincoln City, Taft & Depoe Bay. Spoke with Keith Schmidt about Salt-X[,]" and "returned to Salem office" on February 2, 2009. (Ptfs' Ex 7 at 21.) Ostrom did not claim any expenses for lodging or meals while he was away and it was assumed by both Hoots and McDonald that Ostrom stayed at his beach house. McDonald inferred that the travel was, in fact, personal in nature and any business conducted was incidental. The court agrees with McDonald and finds it difficult to conclude that Ostrom's reported business trips to the coast were not at least partially, if not primarily, for personal recreational purposes.

Hoots noted that Ostrom withdrew from his prior occupation, construction, to pursue his marine supply sales business. The evidence presented suggests that Ostrom withdrew from his construction business due to a variety of medical problems and physical limitations. There is no evidence that Ostrom would have given up construction solely to pursue marine supply sales. The third factor supports Defendant.

4.      *Expectation that assets used in activity may appreciate in value*

"The term profit encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized * * *." Treas Reg § 1.183-2(b)(4). Hoots conceded that Ostrom Company had no assets likely to appreciate in value. The evidence suggests that Ostrom had no expectation that assets acquired in his marine supply sales activity would appreciate in value. The fourth factor is not relevant.

5.      *The success of the taxpayer in carrying on other similar or dissimilar activities*.

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable." Treas Reg § 1.183-2(b)(5).

Hoots testified that Ostrom previously operated a successful construction business for 30 years.[4] He testified that Ostrom began his construction business in 1976 and continued until 2006. (*See* Ptfs' Ex 11 at 3-10.) Hoots testified that both businesses involved sales and marketing. Ostrom's prior success in his construction business supports a finding that Ostrom was engaged in marine supply sales with the intent to make a profit. The fifth factor supports Plaintiffs.

6.      *The taxpayer's history of income or losses with respect to the activity*.

"A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be

---

[4] Hoots testified that Ostrom's construction business was profitable during the majority of tax years from 1979 through 2004.

indicative that the activity is not engaged in for profit. If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, such as drought, disease, fire, theft, weather damages, other involuntary conversions, or depressed market conditions, such losses would not be an indication that the activity is not engaged in for profit."

Treas Reg § 1.183-2(b)(6); *see also Knudsen*, 94 TCM (CCH) at 469.

Ostrom Company reported losses for each year since its formation in 2007. (*See* Def's Ex H at 1, 18, 31, 45, 56.) From 2007 through 2011, Ostrom Company reported the following gross receipts, deductions, and net losses on its federal income tax returns:

| Year | Gross Receipts | Cost of Goods Sold | Deductions | Net Loss | Exhibit |
|------|---------------|--------------------|-----------|----------|---------|
| 2007 | $26,616[5] | $28,975 | $22,309 | $24,610 | (Def's Ex H at 4) |
| 2008 | $1,307 | $1,176 | $30,324 | $30,193 | (Def's Ex H at 18) |
| 2009 | $811 | $420 | $21,675 | $21,284 | (Def's Ex H at 31) |
| 2010 | $510 | -0- | $17,237 | $16,727 | (Def's Ex H at 45) |
| 2011 | $239 | -0- | $15,868 | $15,629 | (Def's Ex H at 56) |

Hoots testified that Ostrom Company suffered losses as a result of poor economic conditions beginning in 2008. He provided an article, dated December 17, 2012, on start-up survival rates of both new establishments and new firms. (Ptfs' Ex 12.) Regarding "new establishments founded in 2005 through 2010" and "new firms started in 2005[,]" the article reports: "Five years after they were started, the Census Bureau finds that 45 percent of the new establishments and 43 percent of the new firms were still alive." (*Id.* at 1.) According to the article, those figures were down from previous start-up survival rates for businesses in 1995 and 2000. (*Id.*)

The history of losses sustained by Ostrom Company each year since its formation in 2007 suggests that Ostrom may not be engaged in his marine supply sales activity for profit. The court

---

[5] The "business activity" listed on Ostrom Company's 2007 federal income tax return was "construction." (Def's Ex H at 5.) Hoots testified that the 2007 return was in error; Plaintiff was not engaged in any construction activity in 2007. Ostrom changed "Ostrom Construction Company" to "Ostrom Company" in 2007. It is unclear whether the gross receipts reported in 2007 pertained to Ostrom Construction Company or Ostrom Company.

received no evidence on the amount of time typically required to bring a marine supply sales business to "profitable status." Hoots explained the series of losses incurred by the Ostrom company during each year of operation as resulting from poor economic conditions and provided an article in support of his contention. It may be that poor economic conditions were the cause of losses sustained by the Ostrom Company. However, without any evidence on "the period which customarily is necessary to bring the operation to profitable status[,]" the court finds Plaintiffs' evidence is inconclusive. Due to the continuous losses incurred by the Ostrom Company since its formation in 2007, the sixth factor supports Defendant.

> 7.      *The amount of occasional profits, if any, which are earned*
>
> "The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent. An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit."

Treas Reg § 1.183-2(b)(7).

Hoots testified that, although Ostrom Company's chance for profit was small, any profit received would be large. He likened the Ostrom Company's chance for profit to the "wildcat oil well" described in the Treasury Regulation: "Thus is may be found that an investor in a wildcat oil well who incurs very substantial expenditures is in the venture for profit even though the expectation of a profit might be considered unreasonable." Treas Reg 1.183-2(a).

There is no evidence to support Plaintiffs' contention that any profit received would have been large. As discussed above, the court received no evidence of the profit or commission Ostrom Company could have hoped to receive from a large sale. The gross receipts reported by Ostrom Company on its federal income tax returns between 2008 and 2011 are small in relation to the deductions claimed in each of those years. The seventh factor supports Defendant.

8.      *The financial status of the taxpayer*

"Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved."

Treas Reg § 1.183-2(b)(8).  Hoots argued that this case is similar to *Aegerter v. Dept. of Rev.* (*Aegerter*), 11 OTR 399, 400-401 (1990), in which this court found that one of the taxpayers' "multilevel marketing" businesses was engaged in for profit.  (*See* Ptfs' Ex 14.)  One factor that supported the taxpayers in *Aegerter* was the fact that the business was started during a time when the taxpayer-husband was changing jobs, and "there was a clear need for additional family income."  *Aegerter*, 11 OTR at 400-401.  The taxpayer-wife "was searching for an in-home business to supplement the family income."  *Id.* at 400.  Hoots testified that Ostrom's wife, Barbara Ostrom, is and was a pharmacist and made between $100,000 and $125,000 a year during the tax years at issue, which he characterized as "above-average," but not "rich."  Hoots argued that there is no evidence here that Plaintiffs are wealthy individuals seeking to shelter their wealth from taxation through business losses.  He acknowledged that any loss shields *some* income from taxation.

The court agrees with Hoots that Plaintiffs' income from other sources is not so substantial that the court can infer that it was Ostrom's intention to shield income from taxation through business losses.  However, the court does not agree that, as in *Aegerter*, "there was a clear need for additional family income."  (*Id*. at 401.)  The eighth factor is neutral.

9.      *Elements of personal pleasure or recreation*

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved.  On the other hand, a profit motivation may be indicated where an activity lacks any appeal other than profit."

Treas Reg § 1.183-2(b)(9). "[A] business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility. 'Success in business is largely obtained by pleasurable interest therein.' " *Jackson v. Comm'r*, 59 TC 312, 317 (1972) (citation omitted).

Hoots testified that boating is recreation for Ostrom, but selling boating equipment is not; selling goods is hard work, not recreation. McDonald noted that Ostrom has his own boat and a house on the Oregon coast. (*See* Def's Ex F.) He testified that he thinks Ostrom's personal pleasure gained from his activities through Ostrom Company is a strong factor in support of Defendant's position.

The court agrees with Hoots that selling marine supplies is not a recreational activity. However, it is clear from the evidence presented that Ostrom is a boating and fishing enthusiast. Thus, it is likely that Ostrom derived some pleasure from attending trade shows and sampling new products. Additionally, as discussed above, it is likely that some or all of Ostrom's claimed business trips to the Oregon coast were partially or primarily for personal purposes. For those reasons, the ninth factor supports Defendant.

## III. CONCLUSION

After careful consideration and based on the factors identified in Treasury Regulation 1.183-2(b), the court finds that Ostrom's marine supply sales activity was not engaged in for profit. Ostrom did not testify at trial, making it difficult for the court to determine whether his intent was to make a profit. Based on the evidence presented, the court finds that making a profit was not the primary objective of Ostrom's marine supply sales activity. As a result, Ostrom Company's deductions for expenses are limited to its profits for tax years 2008, 2009, and 2010 under IRC section 183. Now, therefore,

IT IS THE DECISION OF THIS COURT that Ostrom's marine supply sales activity was not a for profit activity for tax years 2008, 2009, and 2010. Ostrom Company's deductions for expenses are limited to its profits for tax years 2008, 2009, and 2010 under IRC section 183.

Dated this ____ day of June 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This Decision was signed by Magistrate Allison R. Boomer on June 7, 2013. The Court filed and entered this Decision on June 7, 2013.***